IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

OSCAR STILLEY,                                                        PLAINTIFF
Reg. # 10579-062

V.                          CASE NO. 2:15-CV-163-BSM-BD

USA, et al.                                                          DEFENDANTS

RECOMMENDED DISPOSITION

I.    Procedures for Filing Objections:

This Recommended Disposition ("Recommendation") has been sent to Chief

Judge Brian S. Miller. Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within

fourteen (14) days of this Recommendation.

If no objections are filed, Judge Miller can adopt this Recommendation without

independently reviewing the record. By not objecting, parties may waive any right to

appeal questions of fact.

II.    Background:

Plaintiff Oscar Stilley, formerly an inmate at the Bureau of Prison's ("BOP")

Federal Correctional Institution in Forrest City, Arkansas ("FCI-FC") and currently an

inmate at the BOP's Federal Correctional Institution in Oakdale, Louisiana, filed this

lawsuit raising claims under the Federal Tort Claims Act ("FTCA"). Specifically, he

claims that a force-feeding on May 16, 2013 constituted battery and was negligently conducted.[1]  He also claims that Defendants were negligent in providing him medical care by failing to administer all of his medications at FCI-FC. (#7 at p.4, #35, #40, p.2, #42 #70, p.3)

The United States of America ("Defendant") has filed a motion for summary judgment. Defendant contends that Mr. Stilley cannot prevail on his battery claims because he cannot show Defendants acted with the requisite intent. Defendant also contends that Mr. Stilley cannot meet his burden to show that the medical care provided fell below the standard of care or that it proximately caused him injury. (#51) Mr. Stilley has responded. (#69) The motion is ripe for review.

III.    **Standard:**

Summary judgment means that the court rules in favor of a party without the need for a trial. A party is entitled to summary judgment if the evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine dispute as to any fact that is important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).

---

[1] Judge Miller's order only allowed Mr. Stilley to proceed under the theory of battery, as his complaint alleged. (#7, p.5, #42) Therefore, the Defendants did not brief the matter of negligence. Mr. Stilley argues he intended to bring a negligence claim regarding the force-feeding. (#70, p. 2) Liberally construing Mr. Stilley's pleadings for purposes of summary judgment, the Court will consider Mr. Stilley's negligence argument.

2

Here, Defendant has moved for summary judgment, so it must come forward with evidence showing that there is no real dispute about any fact that is important enough to make a difference in how the case is decided. If it meets this burden, Mr. Stilley must respond by producing evidence that contradicts the Defendant's evidence. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If he does not come forward with enough evidence to show that there is a real dispute, the Court must grant summary judgment in favor of Defendant, and there will be no trial. *Celotex Corp.,* 447 U.S. at 322–23, 106 S.Ct. at 2552.

**IV.    Discussion of the May 16, 2013 Force-Feeding:**

On May 16, 2013, while engaging in a hunger strike,[2]  Mr. Stilley's blood sugar was extremely low and he repeatedly refused to drink any nutritional supplements. (#52-1) Dr. Resto-Rivera, the clinical director at FCI-FC, determined that Mr. Stilley should be force-fed to protect against brain damage or injury from hypoxia. (#52-1) Dr. Resto-Rivera consulted with the Regional Medical Director and she agreed with Dr. Resto-Rivera's assessment. (#52-1)

Mr. Stilley voluntarily submitted to the application of restraints. (#52-3, #52-4, #52-5, #52-6) He was placed in a restraint chair, then moved to medical. (#52-3, #52-4,

---

[2] Mr. Stilley engaged in several hunger strikes while held at FCI-FC. (#52-1)

#52-5, #52-6) Mr. Stilley claims that Defendants yanked down on his restraints "with the apparent intention of causing pain."[3]  (#7, p. 4, #69, p.3, 5)

Mr. Stilley was given one last opportunity to drink the nutritional supplement and avoid the force-feeding. (#69, p. 5) He refused and, at about 10:15 a.m., the force-feeding began. (#52-1) Water was not immediately available at the beginning of the feeding. (#7, p.4, #52-2) At some point, although it is not clear exactly when, water was provided. (#52-2) Mr. Stilley states that he normally is given water to drink while the feeding tube is being inserted during force-feeding, and that results in less trauma. (#69, p.5)

It took two attempts to insert the feeding tube. (#52-1) During the first attempt, the feeding tube came out of his mouth, and Mr. Stilley bit down on the feeding tube. (#52-4) On the second attempt, a correctional counselor, Steve Hagler, placed his left hand on Mr. Stilley's lower jaw to prevent him from moving his head down to force the tube out. (#52-4) Once the tube was inserted, two cartons of nutritional supplements were administered. (#52-1)

After the feeding, Mr. Stilley became light headed, and his blood pressure dropped. (#52-2) He was then placed on an examination table, where IV fluids were

---

[3] Mr. Stilley also claims that, in the days leading up to the force-feeding, prison officials intentionally deprived him of salt, causing his electrolyte levels to become low and thus triggering the need for force-feeding. (#26 at p. 7) This claim would require some expert testimony, and Mr. Stilley has not offered any.

administered while he was monitored. (#52-1, #52-2) Upon completion of the medical evaluation, he was moved to a holding cell, and the restraints were removed. (#52-4)

By 3:00 p.m. his glucose levels had risen. (#52-1) By 6:00 p.m., Mr. Stilley consumed nutritional supplements on his own, with no complaints. (#52-1) The following day, Mr. Stilley denied having pain, except for discomfort in the back of his palate due to the insertion of the nasal tube the day before. (#52-1)

According to current BOP employees who were involved in the force-feeding on May 16, 2013, they all followed BOP procedure and policy and did not intend to harm or cause offensive contact during the feeding or use of restraints. (#52-2 - #52-5)

A.    Battery

Arkansas law defines battery as "a wrongful or offensive physical contact with another through the intentional conduct by the tortfeasor and without the consent of the victim." *Costner v. Adams*, 121 S.W.3d 164,170 (Ark. App. 2003). Under Arkansas law, battery has two elements: (1) the person acted with intent to cause some harmful or offensive contact; and (2) a harmful or offensive contact resulted. See Ark. Model Jury Instr., Civil AMI 418. Defendant argues that Mr. Stilley has failed to allege conduct that supports intent to harm or injure him. (#22)

Mr. Stilley concludes, however, that harmful contact occurred when a correctional officer "yanked down hard on the restraints" and when an unlubricated tube was inserted without having water immediately available. (#69, p.5) A force-feeding by its nature

5

indicates that some contact and force will be used. Even if the force-feeding caused Mr. Stilley injury, he has not demonstrated that any of the personnel involved in the force-feeding intended to inflict injury or pain. In fact, Mr. Stilley was given one last opportunity to drink the nutritional supplement and avoid the force-feeding entirely. (#69, p. 5) He chose not to drink it and, thus, voluntarily submitted to a force-feeding. (#69, p.5)

Mr. Stilley offers no evidence to suggest that any of the personnel involved intended to harm him in the administration of the May 16, 2013 force-feeding. He objects to how hard a correctional officer pulled on the restraints and doubtlessly would have preferred to have had water and a lubricated feeding tube, but those circumstances do not make this a battery. Accordingly, Mr. Stilley's battery claim should be dismissed.

B.    Negligence

Under Arkansas law, to prevail on a negligence claim, a plaintiff must plead and prove that the defendant owed a duty to the plaintiff; that the defendant breached that duty; and that the breach was the proximate cause of plaintiff's injuries. *Duncan v. Exxon Mobil Corp*, 968 F.Supp.2d 996, 999 (E.D. Ark. 2013). Proximate cause means "a cause, which, in a natural and continuous sequence, produces damage and without which the damage would not have occurred." *Mangrum v. Pigue*, 198 S.W.3d 496, 501 (Ark. 2004).

Here, Mr. Stilley alleges the correctional officers were negligent in failing to provide him water and lubrication for the feeding tube. Had they done so, he argues, the

6

force-feeding would have been less traumatic. (#69, p.5) Mr. Stilley never explains

exactly what injuries he suffered as a result of the manner the force-feeding was

administered; instead, he alleges generally that this force-feeding was "painful and

traumatic." (#7, p.4, #68, p,6).

Any force-feeding likely results in some pain and trauma, as Mr. Stilley concedes.

(#68, p. 6). While Mr. Stilley clearly would have preferred that the force-feeding be

conducted in a different manner, he has not demonstrated that any delay in providing

water or in failing to lubricate the tube were the direct cause of "trauma and pain."

Accordingly, Mr. Stilley's negligence claim fails.

## V.    **Discussion of Missed Medications**:

On September 25, 2012, Mr. Stilley asked a nurse practitioner to prescribe him a

probiotic (saccharomyces boulardii) to treat gastrointestinal issues related to his

two-month-long hunger strike. (#52-7) Because this probiotic was not a BOP formulary

item, in accordance with policy, the request was reviewed by local health services and

forwarded to the South Central Regional Office ("Regional") for authority to order the

probiotic. (#52-7) Regional denied the request on September 26, 2012, and recommended

that a formulary option be used instead. (#52-7) It is not clear from the medical records

what formulary option, if any, was used to treat Mr. Stilley's gastrointestinal complaints.

On March 13, 2014, Mr. Stilley again requested saccharomyces boulardii while on

a hunger strike. (#52-7) The nurse practitioner prescribed a non-formulary probiotic:

lactoballus acidophilus. (#52-7) This request was locally reviewed and forwarded to the Regional for a decision. (#52-7) Regional denied the request on March 19, 2014. (#52-7) Mr. Stilley contends that, as a result of being denied the saccharomyces boulardii, he suffered a yeast infection. (#7 at p. 6)

On February 20, 2014, Mr. Stilley was prescribed nystatin cream for a rash on his penis. (#52-7) The following day, Mr. Stilley declared a hunger strike, so he was moved to a dry cell for close monitoring. (#52-7) On March 1, 2014, during a medical exam, Mr. Stilley noted that his nystatin cream had been removed, and he refused to drink anymore nutritional supplements until his cream was returned. (#52-7) On March 4, 2014, Mr. Stilley was transported to the local hospital for treatment. There he complained about the lack of nystatin cream. (#52-7) He stated that he would end his hunger strike if his nystatin cream was returned. (#7, p.40, #52-7) A new prescription was submitted, and on March 6, 2014, Mr. Stilley received his nystatin cream. (#52-7) Mr. Stilley claims that the denial of his requested probiotics and nystatin cream amounts to negligence, as defined by Arkansas law. (#26 at p. 8)

Pursuant to the Arkansas Medical Malpractice Act,

In any action for medical injury, when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving:

(1) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant, the degree of skill and learning ordinarily possessed and used by members of

> the profession of the medical care provider in
> good standing, engaged in the same type of
> practice or specialty in the locality in which he
> or she practices or in a similar locality;
>
> (2) By means of expert testimony provided only by a medical care
> provider of the same specialty as the defendant that the medical care
> provider failed to act in accordance with that standard;[4] and
>
> (3) By means of expert testimony provided only by a qualified
> medical expert that as a proximate result thereof the injured person
> suffered injuries that would not otherwise have occurred.

Ark. Code Ann. § 16-114-206(a)

Thus, under Arkansas law, a plaintiff has the burden of producing expert testimony to substantiate his claims of medical malpractice. *Robbins v. Johnson*, 241 S.W.3d 747, 751 (Ark. 2006); *Skaggs v. Johnson*, 915 S.W.2d 253, 325-326 (Ark. 1996).

Here, expert testimony is required to support Mr. Stilley's claim that the denial of probiotic or nystatin cream caused him an injury and that his medical care fell below the proper standard of care. According to the declaration of Chief Pharmacist Thomas Garbini, there is no indication that Mr. Stilley suffered any adverse effects from not being provided the probiotics. (#52-7) Mr. Stilley alleges that he suffered a yeast infection because he did not receive the probiotics, but he has failed to provide any expert testimony to bolster this assertion. As to the lack or delay in providing nystatin cream,

---

[4] A plaintiff is no longer required to use expert testimony by a medical care provider of the same specialty. See *Broussard v. St. Edward Mercy Health System, Inc.,* 386 S.W.3d 385 (Ark. 2012).

there are no medical records or expert testimony indicating that lack of the cream for 14 days negatively impacted Mr. Stilley's health.

Mr. Stilley alleges that the denial of the probiotics violated ACA Expected Practice 4-4381 [Provision of Treatment] (mandatory), which provides that, "[c]linical decisions are the sole province of the responsible clinician and are not countermanded by nonclinicians."[5] (#26 at p. 8) However, the director making the decision not to give Mr. Stilley probiotics was a physician. (#52-7, p.9 & 17) Therefore, Mr. Stilley cannot show there was a violation of an ACA standard.

Mr. Stilley obviously disagrees with the medical care he received, but there is simply no evidence demonstrating that a lack of probiotics or nystatin for 14 days fell below the applicable standard of care and caused him injury. Accordingly, his negligent medical care claims should be dismissed.

## VI.   <u>Conclusion</u>:

The Court recommends that Defendant's motion for summary judgment (#51) be GRANTED, that all other pending motions be DENIED as moot, and that this lawsuit be DISMISSED, with prejudice.

DATED this 13th day of October, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

---

[5] The American Correctional Association (ACA), a private, nonprofit organization, has promulgated standards for adult correctional facilities. See Am. Correctional Ass'n, Standards for Adult Correctional Institutions xviii (4th ed. 2003).